## DORER v. MOODY.

Patent Appeal No. 2665.

Court of Customs and Patent Appeals.
April 15, 1931.

Cleon J. Sawyer, of New York City, for appellant.

Frank A. Bower, of New York City (Edward A. Hathaway, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

An interference was declared by the Acting Examiner between patent, No. 1,586,978, granted to Dorer, June 1, 1926, upon an application filed February 3, 1921, and the application (which appears to be a divisional application of a parent case, the latter of which ripened into patent No. 1,502,865, July 29, 1924), filed June 15, 1923, but relating back to the parent application filed August 21, 1920. By virtue of this latter date Moody became the senior party.

The counts of this interference are two in number as follows:

"1. In combination with a casing having suction and discharge means, a rotary impeller delivering fluid to the discharge, and means in the suction imparting rotational and axial velocity to the fluid before entering the impeller and separated therefrom by a conversion chamber.

"2. In combination with a casing having suction and discharge means, a double impeller connected at each side with said suction, and means in the suction at each side of said impeller and separated therefrom by conversion chambers for imparting rotational and axial velocity to the fluid before entering the impeller."

Dorer moved to dissolve the interference on the ground that Moody was not entitled to make the counts.

Moody moved to amend by adding certain additional claims from the Dorer patent as new counts.

The Law Examiner denied both motions.

Upon the hearing before the Examiner of Interferences, Dorer raised certain points, to wit: (a) Moody's lack of right to make the counts; (b) that Moody could take no benefit from his application of August 21, 1920; (c) that Moody was estopped by his long delay in presenting claims corresponding to the counts in issue; and (d) that there should be a recommendation of dissolution under Patent Office rule 126, because Moody was precluded by his prior patents, 1,321,538 and 1,460,428, from obtaining patent on the counts at issue.

The Examiner of Interferences declined to entertain the matter embraced in contention (d), holding that the points thereof might have been presented as fully "before the law examiner as they are presented here," but stating that it was not intended to give any intimation that his views upon the matter differed from the views of the Law Examiner. Also the Examiner of Interferences held that rule 130 prohibited him from entertaining points (a) and (b). He, therefore, considered and passed only upon the question of estoppel, holding that Moody was not estopped, and awarding him priority.

Upon appeal to the Board of Appeals of the Patent Office, the several points above mentioned were presented to that tribunal and there adjudicated, the decision of the Examiner of Interferences awarding priority to Moody being affirmed.

The case was then appealed to this court and errors embracing appellant's foregoing contention assigned.

We shall deal with these assignments of error somewhat in inverse order.

As for the subject-matter embraced in (d), supra, the Board said: "These are matters for ex parte consideration. They furnish no ground for awarding priority in favor of Dorer and under the well established practice appellant is not entitled to a consideration thereof on an appeal from a decision on priority." We find no error in this.

While appellant's fourth assignment of error, apparently, relates to the question of estoppel embraced in point (c), supra, it does not use the word "estopped" and is not very specific in respect thereto. The subject is not discussed in the brief, nor do we recall any emphasis of it in the oral argument.

The authorities cited in the decisions of the Examiner of Interferences and of the Board of Appeals, Harbridge v. Perrin, 54 App. D. C. 106, 295 F. 927, 321 O. G. 705, 1924 C. D. 237; and Leonard v. Everett, 52 App. D. C. 90, 281 F. 594 (1922) 304 O. G. 232, sustain their holdings upon this issue.

This leaves to be considered only the question of whether Moody is entitled to make the claims embraced in the two counts. This question having been decided in the affirmative by both tribunals of the Patent Office as a result of the examinations there had by the experts, it must be clearly shown that their decision was wrong in order to justify this court in reversing their actions.

Appellant's brief argues this issue under two heads: (1) That Moody's application does not disclose a conversion chamber within the meaning of the Dorer patent, and (2) that Moody is not entitled to the date of his 1920 application, now patent 1,502,865, because, as we understand it, appellant insists that it does not disclose helically inclined stay vanes.

The invention at issue relates to rotary hydraulic pumps, the general object being to

control the flow or force of the water in such a manner as that it will have a rotational and axial velocity before entering the impeller which will cause the machinery operated by it to function at high speed.

Both parties rely upon their filing dates, and appellant insists that, since the counts were claims of the Dorer patent, they must be given the meaning to which the Dorer patent is limited, and that they must have been disclosed with this meaning in Moody's parent application of August 21, 1920, and not alone in his later divisional application, in order to give Moody priority, because the divisional date was later than appellant's filing date.

Both parties show certain chambers which separate the impellers from the "means in the suction imparting rotational and axial velocity to the fluid before entering the impeller." Dorer refers to these as "conversion chambers," and, in his specifications, describes them as being "for transforming the energy of the fluid into rotational velocity in the same direction of rotation as the impeller," and insists this meaning must be given to the "conversion chambers" of the counts.

Moody does not refer to his chambers as "conversion" chambers, but says of them in the specification that the water "passing through the vane free chambers 21 and 22 is delivered to the impellers 13 and 14 in the form of solid whirling streams."

The contention of appellant is that by reason of the shape of Moody's chambers, as disclosed by his drawings, the outlet points being somewhat expanded and not contracted, as is claimed for Dorer's chambers, the impeller of Moody does not receive the liquid at an increased velocity as does the impeller of Dorer.

It will be observed that the counts do not in themselves call for increased velocity. They speak only of "imparting rotational and axial velocity." The word "conversion" is surely broad enough, as was said by the Board, "to cover the chambers of the respective parties even though they have an effect on the stream of water passing therethrough that differs somewhat in kind or degree."

Even if we give to them the construction contended for by appellant, that is, that under the Dorer specifications the chambers must be so shaped as to bring about increased

velocity, then it must be said that, accepting the drawings as accurately representing the dimensions and conformation of the chambers of the respective parties, we are unable to detect therein a sufficient distinction between the respective devices to cause us to feel justified in overruling, upon this ground, the conclusion of the tribunals of the Patent Office.

The court was favored by counsel for the parties with enlarged figures of the drawings, different features thereof being shown in different colors. This greatly aided in our efforts to study them which we have endeavored carefully to do.

Upon the issue relating to the "stay vanes" the decision of the Board says:

"Moody's application in interference describes the guide vanes 19 and 20 as 'helically inclined.' Moody's patent No. 1,502,-865 states (page 2, line 42) that the stay vanes 32 conform to the flow lines and are intended solely for mechanical support. While Moody does not specifically make this statement of his stay vanes 23, under discussion, it is reasonable to suppose that this statement is also applicable thereto. It is unreasonable to assume that Moody would so construct his stay vanes as to take out the whirling motion of the water, the very motion for which he provides a volute casing.

"This question was passed upon by the law examiner in his decision on the motion to dissolve and by the examiner of interferences in his decision on the motion of Dorer to shift the burden of proof. We find no error in their decision that Moody is entitled to the date, August 21, 1920, of filing of the application of his patent No. 1,502,865, for the invention in issue."

The reasoning of the Board in reaching its conclusion upon this point appears to us to be not fallacious, but sound.

Moody employed a volute for the specific purpose of imparting a whirl or rotation to the fluid. It surely would not accord with sound common sense to assume that, having provided this means for a specific purpose, he then defeated the purpose by employing other means inconsistent with the first.

We are not convinced that appellant's assignments of error are well taken.

The decision of the Board is affirmed.

Affirmed.